PJS:JJT:nl



FILED
NOV 1 2 2014
HARRISBURG, PA   DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) CRIM. NO. 1:14-CR-289 |
| | ) |
| v. | ) |
| | ) ( Rambo    , J.) |
| JORGE SALAZAR, | ) |
| a/k/a J. MICHAEL SALAZAR, | ) |
| | ) |
| Defendant. | ) |

## INDICTMENT

THE GRAND JURY CHARGES THAT:

### THE DEFENDANT

At all times material to this Indictment:

1. Defendant Jorge Salazar, also known as J. Michael Salazar ("Salazar"), is a resident of Georgia.

### THE SCHEME TO DEFRAUD

2. From in or about October 2013, through in or about June 2014, Defendant

JORGE SALAZAR,
a/k/a J. MICHAEL SALAZAR,

knowingly devised and intended to devise a scheme to defraud investors and to obtain money from investors by means of false and fraudulent pretenses, representations, and promises.

## MANNER AND MEANS OF THE SCHEME

It was part of the scheme that:

3. In or about 2012, Salazar was introduced to T.B., a resident of Adams County, Pennsylvania.

4. Salazar told T.B. Salazar was an attorney and owned a law firm in Atlanta, Georgia.

5. Salazar also told T.B. Salazar owned an investment company called Eclypse Investment Group.

6. Salazar gave T.B. a business card listing a business name of "Eclypse Investment Group" with an email address of "jsalazar@jsalazarlaw.com."

7. In or about October 2013, Salazar told T.B. that Salazar would create an investment company for T.B. and that the company would be called "B. Investment Holdings."

8.    According to Salazar's representations to T.B., B. Investment Holdings would solicit investors to invest in a government program.

9.    Salazar further represented to T.B. that the investments in the government program were guaranteed to return three times the initial investment.

10.   In October 2013, Salazar sent a text message to T.B. representing, "It is a $50 million government program to attract new small investors.  It's is (sic) government guarantee to you therefore you guarantee it."

11.   Salazar further represented to T.B. that investors could invest up to $49,999.00 and that investments could be made by cash or check.

12.   Salazar told T.B. that funds invested with B. Investment Holdings would, in turn, be invested with Salazar's company, Eclypse Investment Group.

13. According to Salazar, T.B. had to receive all investments by November 1, 2013, and investors would receive their payouts by March 15, 2014.

14. Salazar gave T.B. a document entitled "Agreement and Receipt." Salazar instructed T.B. to sign and give the Agreement and Receipt to those persons who invested with B. Investment Holdings.

15. The document, "Agreement and Receipt," specifically states that investments are guaranteed to make a return of three times the initial investment, and that investors would receive their returns by March 15, 2014.

16. Salazar told T.B. that because he was owner of B. Investment Holdings, T.B. could not invest in the government program, but that Salazar's company, Eclypse Investment Group, would pay T.B. $150,000 for recruiting investors.

17. Based on the promises and representations Salazar made to T.B., T.B. solicited friends and co-workers to invest in B. Investment Holdings.

18. Based on Salazar's promises and representations, T.B. told investors that (1) their money would be invested in a government program; (2) their investments would yield a return of three times the initial investment; (3) payouts would be made by March 15, 2014; and (4) the investments were guaranteed.

19. T.B. received more than $350,000.00 from approximately nineteen (19) investors which T.B. turned over to Salazar for investment through Eclipse Investment Group.

20. On or about December 3, 2013, Salazar represented to T.B. that the investments B. Investment Holdings had received and turned over to Salazar had met the targeted return rate of three times the invested amount.

21. On that same date, Salazar further represented to T.B. that Salazar had deposited the investors' money in a savings account earning one percent (1%).

22. In a text message to T.B., Salazar explained, "As far as the investments for your friends, it's already made the goals and it's safely away. It's now earning about a 1%. I'm just glad it's all done."

23. Contrary to the promises and representations Salazar made to T.B., the more than $350,000.00 T.B. turned over to Salazar for investment with Eclypse Investment Holdings was not invested as promised. In reality, Salazar misappropriated the investors' funds for his own personal gain.

## USE OF WIRE TO EXECUTE THE SCHEME

On or about each of the dates set forth below, in the Middle District of Pennsylvania and elsewhere, Defendant

**JORGE SALAZAR,**
**a/k/a J. MICHAEL SALAZAR,**

for the purpose of executing the scheme described above, caused to be transmitted by means of wire communications in interstate commerce, the signals and sounds described below for each count, each transmission, constituting as a separate count:

| COUNT | DATE | DESCRIPTION |
| --- | --- | --- |
| 1 | 12/26/13 | On-line withdrawal from Member's First in Pennsylvania to Suntrust Bank in Georgia |
| 2 | 01/06/14 | On-line withdrawal from Member's First in Pennsylvania to Suntrust Bank in Georgia |

| COUNT | DATE | DESCRIPTION |
|---|---|---|
| 3 | 02/12/14 | On-line withdrawal from Member's First in Pennsylvania to Suntrust Bank in Georgia |
| 4 | 02/25/14 | On-line withdrawal from Member's First in Pennsylvania to Suntrust Bank in Georgia |
| 5 | 03/10/14 | On-line withdrawal from Member's First in Pennsylvania to Suntrust Bank in Georgia |
| 6 | 03/19/14 | On-line withdrawal from Member's First in Pennsylvania to Suntrust Bank in Georgia |

All in violation of Title 18, United States Code, Section 1343.

A TRUE BILL

FOREPERSON, GRAND JURY

PETER J. SMITH
United States Attorney

11-12-2014
Date